NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

SEP 26 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 24-3169 |
| Plaintiff - Appellee, | D.C. No. 1:21-cr-02053-SAB-1 |
| v. | |
| DAVID ELMO CURRY, | MEMORANDUM* |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Eastern District of Washington
Stanley Allen Bastian, District Judge, Presiding

Argued and Submitted September 15, 2025
Seattle, Washington

Before: W. FLETCHER and DE ALBA, Circuit Judges, and ORRICK, District Judge.**

David Elmo Curry appeals his convictions on two counts of attempting to persuade, induce, entice, or coerce a minor to engage in unlawful sexual activity, in violation of 18 U.S.C. § 2422(b). We have jurisdiction under 28 U.S.C. § 1291.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable William Horsley Orrick, III, United States District Judge for the Northern District of California, sitting by designation.

We affirm the conviction on Count 1 and reverse the conviction on Count 2.

1. Sufficient evidence supports the conviction on Count 1. To convict Curry of violating § 2422(b), the government had to prove Curry took a substantial step toward causing "a minor's assent to unlawful sexual activity." *United States v. McCarron*, 30 F.4th 1157, 1163 (9th Cir. 2022).

Here, a rational juror could find that Curry took a substantial step toward causing a minor's assent by using "Kelli," a perceived parent, as an intermediary to obtain the assent of her fictional minor daughters. *See United States v. Eller*, 57 F.4th 1117, 1120 (9th Cir. 2020) ("§ 2422(b) applies to defendants who use an intermediary in their attempt to coerce minors to engage in unlawful sexual activity."). Curry suggested specific sexual acts he would engage in with Kelli's daughters; agreed to Kelli's terms, including using a condom and refraining from causing pain; offered to purchase lubricant in the girls' favorite flavor; confirmed that Kelli approved of his appearance; and arranged a time and place to meet Kelli and the girls. A rational juror could find that Curry sought to convince Kelli to permit him to engage in sexual activity with her daughters and relied on Kelli's ability as a parent to direct her daughters' behavior. *See United States v. Macapagal*, 56 F.4th 742, 745 (9th Cir. 2022); *United States v. Spurlock*, 495 F.3d 1011, 1014 (8th Cir. 2007) ("We do not believe the statute exempts sexual predators who attempt to harm a child by exploiting the child's natural impulse to

trust and obey her parents.").

In addition, a rational juror could find that Curry took a substantial step toward achieving a minor's assent to unlawful sexual activity by purchasing lubricant in the flavor Kelli suggested, then driving 80 miles with the lubricant to the arranged meeting place. Curry admitted to law enforcement officers that he intended to use the lubricant during oral sex with the minor daughters. A rational juror could find that Curry sought to use the lubricant to either entice the daughters or reduce any inhibitions they might have.

2. "The entrapment defense has two elements: (1) the defendant was induced to commit the crime by a government agent, and (2) he was not otherwise predisposed to commit the crime." *United States v. Spentz*, 653 F.3d 815, 818 (9th Cir. 2011) (internal quotation marks and citation omitted). To show entitlement to a jury instruction, Curry was required to submit "some evidence demonstrating [both] elements of the defense . . . ." *Id.*

On Count 1, Curry failed to present evidence of inducement. Inducement "consists of an 'opportunity' *plus* something else—typically, excessive pressure by the government upon the defendant or the government's taking advantage of an alternative, non-criminal type of motive." *Id.* (quoting *United States v. Poehlman*, 217 F.3d 692, 701 (9th Cir. 2000)). Here, a detective posing as Kelli suggested that Curry engage in sexual activity with minors, and Curry promptly agreed and

began discussing the details. Within a few hours of the detective first contacting him, Curry drove 80 miles to have sex with the minors. Aside from briefly mentioning the possibility of a "setup," Curry expressed no reluctance to go through with the crime. The evidence demonstrates that the government "merely afford[ed]" Curry the opportunity to commit the crime, but did not exert excessive pressure or otherwise induce Curry. *Sherman v. United States*, 356 U.S. 369, 372 (1958). Therefore, the district court did not abuse its discretion in denying Curry's requested instruction on Count 1.

3. However, the district court did abuse its discretion in denying Curry's requested entrapment instruction on Count 2. Curry presented some evidence of inducement. Curry posted an advertisement on an adult website, Doublelist!, seeking a sexual relationship with an adult woman. In response, posing as thirteen-year-old "Sunny," a detective contacted Curry and expressed interest in a sexual relationship. The detective exchanged text messages almost daily with Curry for several weeks, initiating the majority of their conversations. Curry frequently discussed personal, nonsexual details about his life and expressed how much he enjoyed communicating with Sunny. Curry thus presented "some" evidence that the government induced him to commit the crime by applying excessive pressure and "play[ing] on his obvious need" for companionship. *Poehlman*, 217 F.3d at 702.

Curry also presented some evidence of his lack of predisposition. In considering whether a defendant was predisposed to commit a crime, we consider:

> [T]he character or reputation of the defendant, including any prior criminal record; whether the suggestion of the criminal activity was initially made by the Government; whether the defendant was engaged in the criminal activity for profit; whether the defendant evidenced reluctance to commit the offense, overcome only by repeated Government inducement or persuasion; and the nature of the inducement or persuasion supplied by the Government.

*United States v. Cortes*, 757 F.3d 850, 858 (9th Cir. 2014) (alteration in original) (citation omitted). While Curry's prior attempts to engage in sexual activity with Kelli's daughters may demonstrate some predisposition, it was the detective, posing as Sunny, who first contacted Curry and expressed interest in sex. Curry was not engaged in criminal activity for profit. Most importantly, Curry expressed far more reluctance to communicate or engage in sexual activity with Sunny. *See id.* ("Although none of these factors is controlling, the defendant's reluctance to engage in criminal activity is the most important" (citation omitted)). Curry immediately expressed concern that Sunny was a law enforcement officer, raised the possibility several times during their conversations, and at one point stopped talking to Sunny for over a week for that reason. Curry also backed out of three planned meetings and eventually stopped responding to Sunny's attempts to contact him. Because Curry presented some evidence showing both inducement

by the government and his lack of predisposition on Count 2, the district court erred in denying the requested entrapment instruction.  *See Spentz*, 653 F.3d at 818 ("Only slight evidence will create the factual issue necessary to get the defense to the jury," regardless of whether "the evidence is weak, insufficient, inconsistent, or of doubtful credibility" (citation omitted)).

**AFFIRMED IN PART AND REVERSED IN PART.**